The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Hoag and the briefs and oral arguments on appeal to the Full Commission. The appealing party has shown good ground to reconsider the evidence in this matter. Having reconsidered the evidence of record, the Full Commission modifies and affirms the Deputy Commissioners Opinion and Award and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers Compensation Act.
2. An employer-employee relationship existed between the parties on May 13, 1996.
3. Chubb Insurance Group is the carrier on the risk.
4. Plaintiff was injured by accident while in the course and scope of his employment with defendant-employer on May 13, 1996.
5. Medical bills were paid for plaintiff from May 13, 1996 through June 17, 1996. During that time there was no time lost from work.
6. Plaintiffs average weekly wage will be determined by a Form 22.
 EVIDENTIARY RULINGS
All medical records and exhibits are admitted into evidence. The objections appearing in the deposition of Dr. Streeter are OVERRULED. The objections in the deposition of Dr. Mearns appearing on pages 17, 24, 31, 33, 46, 47 and 63 are SUSTAINED. The objections in the deposition of Dr. Mearns appearing on pages 55, 57, 60, 61, 62, 66, 67 and 68 are OVERRULED.
 ***********
Based upon all of the competent evidence of record and the reasonable infrences flowing therefrom, the Full Commission makes the following additional:
 FINDINGS OF FACT
1. On the date of his injury by accident, plaintiff was 39 years old.
2. At the time of the hearing before the Deputy Commissioner, plaintiff had been employed with defendant-employer continuously for the past 17 years and was still so employed on the date of the hearing before the Deputy Commissioner.
3. In May of 1996, plaintiffs position with defendant was as a quality control technician. At that time, he had held that position for about three years. As a quality control technician, plaintiffs job duties included checking different types of equipment for proper air flow, setting the equipment to the government standards and making the necessary adjustments to bring the machine into compliance. Plaintiff then signed off on the machine, documented it and put a calibration sticker on it for a certain period of time before he rechecked it. Plaintiff performed this procedure on breathing machines, also called "huff and puff machines.
4. In May 1996, plaintiff typically worked 43 to 44 hours a week on the day shift.
5. On May 13, 1996, an injury by accident occurred in the course and scope of plaintiffs employment. Plaintiff bent down and was loosening a nut in order to adjust the diaphragm of a machine. As he did this, the unit, which was on wheels, started rolling back. Plaintiff went back with the unit and could feel that he was about to fall. To stop himself from falling, plaintiff put his foot back and attempted to stand up when he hit his right lower back on the corner of a table with steel gauge blocks in it weighing several thousand pounds.
6. Plaintiff felt immediate pain similar to a burning sensation, across his lower back, fell to his knees and could not move for approximately twenty minutes. Plaintiff had a three inch red welt on his back where the table struck him.
7. As soon as he could move, plaintiff went to see Melanie Patterson, the plant nurse, to report the injury to her and to show her the welt. Plaintiff next reported the accident to his supervisor, Mary Faulkner.
8. Ms. Patterson, advised plaintiff to take Tylenol or Ibuprofen and told him that the pain would subside in a few days.
9. After three days plaintiffs back pain had worsened and he returned to Ms. Patterson. Plaintiff had sharp pain and spasms in his right lower back. At that time, Ms. Patterson made an appointment for plaintiff with Onslow Doctors Care for May 15, 1996.
10. Plaintiff treated with Onslow Doctors Care from May 15, 1996 through June 17, 1996. During that time, plaintiff was placed on light duty with restrictions of no heavy lifting or straining, no pushing or pulling, no bending or stooping, was instructed to work half days, and get bed rest. Plaintiff was prescribed various medications for his pain.
11. At his initial visit, plaintiff was diagnosed as having a contusion. He was later diagnosed as having a lumbo-sacral strain/sprain. On June 17, 1996, plaintiffs back was still stiff when he arose in the morning and he was advised to start back exercises to strengthen his muscles.
12. Plaintiffs injury by accident was an accepted claim and all medical bills were paid for by the Workers Compensation carrier. Plaintiff did not lose any time from work.
13. Between July 1996 and February 1997, plaintiff did not see a doctor for his back. From time to time when his back was bothering him, he would tell Ms. Patterson that he was having trouble and she would advise him as to what over-the-counter medications he should take.
14. On January 10 and 24, 1997, plaintiff again presented to Ms. Patterson with lower back pain.
15. By February 1997, plaintiffs back pain could not be eliminated by over-the-counter medications. When plaintiff presented to Ms. Patterson, she would not set up an appointment for him under Workers Compensation. Plaintiff spoke with Regina from Chubb Insurance and Brent, Mine Safety Appliances personnel manager. He was advised to make an appointment with his personal physician.
16. On June 10, 1997, Ms. Patterson referred plaintiff to Chubb Insurance and provided him with the Chubb telephone number. On June 12, 1997, Regina from Chubb informed Ms. Patterson to allow plaintiff to return to Onslow Doctors Care so the doctors could determine whether the current back pain was causally related to plaintiffs May 1996 back injury.
17. On August 18, 1997, Ms. Patterson called Onslow Doctors Care to inform them that plaintiff would be coming in and that his injury was not work-related unless the doctor could relate it back to the May 1996 injury. Since this contact was made by an agent of the employer and since there was an issue as to whether or not the injury was work-related, it was improper for the company nurse to attempt to influence the claimants treating physician concerning his answer to the issue. All she should have communicated was the fact that plaintiff was coming in, the employer was responsible for the bill and the examination was for the purpose of determining whether the injury was a result of the May 1996 injury.
18. On February 4, 1997, plaintiff presented to Dr. Streeter complaining of pain in his lower right lumbar region. Plaintiff informed Dr. Streeter of the visits to Onslow Doctors Care in May and June 1996 for treatment of his back. Dr. Streeter prescribed Ultram for plaintiff and has continued to treat plaintiff to the present. Dr. Streeter diagnosed plaintiff as having sciatica as a result of a re-activation of his 1996 back injury.
19. In August 1997, plaintiff again consulted Dr. Mearns at Onslow Doctors Care. He was diagnosed as having a low back contusion. Physical therapy was recommended. Plaintiff brought a note to Ms. Patterson to obtain approval from Chubb for physical therapy. Ms. Pattersons telephoned Dr. Mearns to explain the history of plaintiffs May 1996 injury and his discharge from care in June 1996. Ms. Patterson did not relate to Dr. Mearns that plaintiff had recently been complaining of renewed back pain since January 10, 1997. Ms. Patterson informed Dr. Mearns that in her opinion, plaintiffs current back pain was not related to plaintiffs prior injury. These comments were prejudicial, unwarranted and improper.
20. In October 1997, Dr. Streeter referred plaintiff to a neurologist, Dr. Abraham. No new information regarding the cause of plaintiffs pain was obtained. X-rays taken revealed mild degenerative changes.
21. Dr. Streeter did not place any work restrictions on plaintiff. Plaintiff was instructed to do that which he could do comfortably, but if he had any sharp pains or persistent numbness or tingling, he was to contact Dr. Streeter. According to Dr. Streeter, plaintiffs back pain would episodically prevent him from working.
22. Plaintiffs injury by accident in May 1996 did not cause anterior spurring or a mild T-11 compression fracture. The compression fracture predated the 1966 injury and the anterior spurring was not the source of plaintiffs pain in 1977. Plaintiff had had no prior treatment for back problems and he was able to perform his regular job in a regular manner up to May 13, 1996.
23. In the fall of 1997, plaintiff was referred to Onslow Memorial Hospital for physical therapy treatments. Plaintiff made considerable progress with physical therapy, but on discharge additional treatment was recommended and further strengthening and stretching exercises suggested.
24. For continued evaluation, plaintiff may need to be seen by an orthopedist and a pain control specialist. He may require an MRI or a diskogram to determine if he has a neuroma.
25. Plaintiffs compensable back injury of May 1996 is the cause of his recurrent back pain.
26. In 1998 plaintiffs pain increased. He began to have pain in his right upper leg and hip and had trouble crossing his right leg. Plaintiff now experiences numbness and pain in his right leg and toes and in his arms at times. Plaintiff gets headaches after having back pain for a few hours. Between May 13, 1996 and the date of the hearing before the Deputy Commissioner, plaintiffs pain and his muscle spasms have increased. If plaintiff stands for twenty minutes or more, his back begins to hurt and he needs to apply hot packs to relieve the pain. Plaintiff is unable to participate in activities that he used to enjoy such as dancing.
27. The appeal to the Full Commission was filed by the insurance company. The Full Commission by this decision orders the insurer to make, or to continue payments of benefits, including compensation for medical expenses. The reasonable attorney fee of plaintiffs attorney for defending this appeal to the Full Commission is $750.00.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission reaches the following additional:
 CONCLUSIONS OF LAW
1. Plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer on May 13, 1996. N.C. Gen. Stat. 97-2(6). Back pain and sciatica that plaintiff has had since that injury are a result of that injury and are compensable.
2. Plaintiff is entitled to payment of all medical expenses incurred as a result of his injury on May 13, 1996, including such treatment in the indefinite future as may tend to affect a cure or provide relief. N.C. Gen. Stat. 97-25.1.
3. The Industrial Commission may, in its discretion, tax defendants with plaintiffs attorney fees on this appeal. N.C. Gen. Stat. 97-88.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay all medical expenses incurred by plaintiff as a result of his injury on May 13, 1996, including such treatment in the indefinite future as may tend to affect a cure or provide relief from this compensable injury.
2. Defendants shall pay the costs, including an expert witness fee in the amount of $275.00 to Dr. Streeter, an expert witness fee in the amount of $275.00 to Dr. Mearns and a reasonable attorney fee of $750.00 to plaintiffs attorney.
This 25th day of April 2000.
 S/_____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
S/_______________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING IN RESULT ONLY:
S/_______________ DIANNE C. SELLERS COMMISSIONER